UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EFS, INC., EFS, INC. 401 (k) PLAN, MICHAEL EGAN, as trustee of the EFS, INC. 401 (k) PLAN, GRASSWORX SE, LLC, GRASSWORX SE, LLC 401(k) PLAN, MICHAEL EGAN, trustee of the GRASSWORX SE, LLC 401(k) PLAN, MASTRAPASQUA ASSET MANAGEMENT, INC., MASTRAPASQUA ASSET MANAGEMENT, INC. 401(k) PLAN, FRANK MASTRAPASQUA and MAURO MASTRAPASQUA, as trustees of the MASTRAPASQUA ASSET MANAGEMENT, INC. 401(k) PLAN, GONZALES COUNTY HOSPITAL DISTRICT, GONZALES COUNTY HOSPITAL DISTRICT 401(k) PLAN, TIM MARKMAN, GREG PETEREK, JOHN FRITZ, LISA GINDLER, and BARBARA KORINACEK, as trustees of the GONZALES COUNTY HOSPITAL DISTRICT 401(k) PLAN, THE HAMILTON-RYKER GROUP, LLC, THE HAMILTON-RYKER GROUP, LLC 401(k) PLAN, WAYNE MCCREIGHT and CRAWFORD GALLIMORE as trustees of THE HAMILTON RYKER GROUP, LLC, 401(k) PLAN, INDEPENDENT PRESS ASSOCIATION, INDEPENDENT PRESS ASSOCIATION 401(k) PLAN, RICHARD LANDRY and BONNIE WALSH as trustees of INDEPENDENT PRESS ASSOCIATION 401(k) PLAN, TUNED IN BROADCASTING, INC., TUNED IN BROADCASTING, INC. 401(k) PLAN, LESTER TURNER, JR., as trustee of the TUNED IN BROADCASTING, INC. 401(k) PLAN, JIMBO'S NATURAL FAMILY, INC., JIMBO'S NATURAL FAMILY, INC. 401 (K) PLAN, JAMES SOMECK and JO ANN DIEHL, as trustees of JIMBO'S NATURAL FAMILY, INC. 401(k) Plan, | No. _____<br><br>JURY DEMAND |

|                              | )  |
|---|---|
| Plaintiffs,                  | ) |
|                              | ) |
| v.                           | ) |
|                              | ) |
| AIG FINANCIAL ADVISORS, INC., | ) |
| and SPELMAN & CO., INC.,     | ) |
|                              | ) |
| Defendants.                  | ) |

## COMPLAINT

### A. PARTIES

1. EFS, Inc. is a Georgia corporation with its principal place of business in Georgia. EFS, Inc. 401(k) Plan is a retirement benefit plan established for the benefit of the employees of EFS, Inc. Michael Egan is trustee of the trust created to hold the assets of this plan. Mr. Egan resides in Georgia.

2. Grassworx SE, LLC. ("Grassworx") is a Georgia limited liability company with its principal place of business in Georgia. Grassworx SE, LLC. 401(k) Plan is a retirement benefit plan established for the benefit of the employees of Grassworx. Michael Egan is trustee of the trust created to hold the assets of this plan. Mr. Egan resides in Georgia.

3. Mastrapasqua Asset Management, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Mastrapasqua Asset Management, Inc. 401(k) Plan is a retirement benefit

plan established for the benefit of the employees of the company. Frank Mastrapasqua and Mauro Mastrapasqua are trustees of the trust created to hold the assets of this plan and both reside in Tennessee.

4. Gonzales County Hospital District is a governmental entity located in Texas. Gonzales County Hospital District 401(k) Plan is a retirement benefit plan established for the benefit of the hospital's employees. Tim Markam, Greg Peterek, John Fritz, Lisa Gindler, and Barbara Korinacek are residents of Texas and are trustees of the trust created to hold the assets of this plan.

5. The Hamilton-Ryker Group, LLC is a Tennessee limited liability company with its headquarters in Tennessee. The Hamilton-Ryker Group, LLC 401(k) Plan is a retirement benefit plan established for the benefit of the company's employees. Wayne McCreight and Crawford Gallimore are residents of Tennessee and are trustees of the trust created to hold the assets of this plan.

6. Independent Press Association is a not-for-profit entity located in California. Independent Press Association 401(k) Plan is a retirement benefit plan established for the benefit of the employees the company. Richard Landry and Bonnie Walsh are residents of California and are trustees of the trust created to hold the assets of this plan.

7. Tuned In Broadcasting, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Tuned In Broadcasting, Inc. 401(k) Plan is a retirement benefit plan established for the benefit of the

employees the company. Lester Turner, Jr. is trustee of the trust created to hold the assets of this plan. He resides in Tennessee and in this judicial district.

8. Jimbo's Natural Family, Inc. is a California corporation with its principal place of business in California. Jimbo's Natural Family, Inc. 401(k) Plan is a retirement benefit plan established for the benefit of the employees the company. James Someck and Jo Ann Diehl are residents of California and are trustees of the trust created to hold the assets of this plan.

9. Defendant AIG Financial Advisors, Inc. ("AIGFA") is a Delaware corporation with its principal place of business in Arizona. AIGFA is a securities broker dealer and a registered investment advisor.

10. Defendant Spelman & Co., Inc. ("Spelman") is or was a Delaware corporation with its principal place of business in Arizona. Spelman is or was a securities broker dealer and a registered investment advisor. In 2005, Spelman became part of AIGFA. AIGFA is therefore the successor corporation of Spelman and is liable for the claims asserted against Spelman in this case.

## B. JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the claims of plaintiffs EFS, Inc. 401(k) Plan, Grassworx SE, LLC 401(k) Plan, Gonzales County Hospital District 401(k) Plan, Hamilton-Ryker Group, LLC 401(k) Plan, Jimbo's Natural Family, Inc.

401(k) Plan, and Mastrapasqua Asset Management, Inc. 401(k) Plan, and the trustees of those plans, because the amount in controversy with respect to the claims of these plaintiffs exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship. The Court has supplemental jurisdiction over the claims of the remaining plaintiffs under 28 U.S.C.§ 1367.

12. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this judicial district.

### C. FACTUAL ALLEGATIONS

13. Each of the plaintiffs in this case engaged Barry Stokes of Dickson, Tennessee and his company, 1Point Solutions, LLC, to provide various services for their retirement account assets. Mr. Stokes and 1Point Solutions were engaged, among other things, to provide plaintiffs with securities in which to invest their retirement assets, to facilitate those investments, and to provide administrative services with respect to those investments.

14. During all times material to this case, Mr. Stokes was affiliated with Spelman and/or AIGFA as a registered securities representative and an investment advisor representative.

15. In addition, Mr. Stokes was licensed as an insurance agent in the State of Tennessee through AIG Life Insurance Co., a corporate affiliate of AIGFA.

5

16. During the years 2002-2006, plaintiffs entrusted assets to Mr. Stokes and 1Point Solutions, as follows:

(a) EFS, Inc. and Grassworx are affiliated companies. EFS, Inc. 401(k) Plan transferred money to Mr. Stokes and 1Point Solutions beginning in 2002 and thereafter. Grassworx 401(k) Plan transferred money beginning in 2005 and thereafter. Altogether, these two plans invested approximately $1.3 million with Mr. Stokes and 1Point Solutions.

(b) Mastrapasqua Asset Management, Inc. 401(k) Plan transferred money beginning in 2002 and thereafter. Altogether, this plan invested more than $900,000 with Mr. Stokes and 1Point Solutions. Some of this money was subsequently transferred away from 1Point Solutions, but almost $800,000 is now missing.

(c) Gonzales County Hospital District 401(k) Plan transferred money beginning in 2002 and thereafter. Altogether, this plan invested approximately $1.2 million with Mr. Stokes and 1Point Solutions.

(d) The Hamilton-Ryker Group, LLC 401(k) Plan transferred money beginning in 2002 and thereafter. Altogether, this plan invested approximately $273,000 with Mr. Stokes and 1Point Solutions.

(e) Independent Press Association 401(k) Plan transferred money beginning in 2005 and thereafter. Altogether, this plan invested approximately $71,000 with Mr. Stokes and 1Point Solutions.

(f) Tuned In Broadcasting, Inc. 401(k) Plan transferred money beginning in 2005 and thereafter. Altogether, this plan invested approximately $32,000 with Mr. Stokes and 1Point Solutions.

(g) Jimbo's Natural Family, Inc. 401(k) Plan transferred money beginning in 2002 and thereafter. Altogether, this plan invested approximately $400,000 with Mr. Stokes and 1Point Solutions.

17. 1Point Solutions provided plaintiffs with forms that allowed them to select from a list of options the specific securities in which their assets would be invested by 1Point Solutions.

18. Thereafter, 1Point Solutions mailed plaintiffs periodic statements purporting to provide details about the securities in which plaintiffs' money had allegedly been invested. 1Point Solutions also provided plaintiffs with access to a website that provided similar information.

19. Subsequently, it has become clear that Mr. Stokes stole the money that plaintiffs transferred to him. Throughout some or all of the time that plaintiffs utilized his services, and unknown to plaintiffs, Mr. Stokes commingled the assets of his clients in accounts in his own name and/or those of 1Point Solutions and withdrew large amounts of money for his own purposes. Mr. Stokes also created and sent to his clients fictitious account statements reflecting alleged asset portfolios that did not exist. Mr. Stokes now claims he does not know what happened to

7

the assets entrusted to him by plaintiffs and by other 1Point Solutions clients.

20. Mr. Stokes and 1Point Solutions are now in bankruptcy. Mr. Stokes has been indicted and is in jail. He has also been terminated by AIGFA.

21. At the time plaintiffs engaged Mr. Stokes and 1Point Solutions, and on all occasions when plaintiffs transferred funds to 1Point, Mr. Stokes did not intend to invest plaintiffs' assets appropriately and intended to misappropriate plaintiffs' funds and/or use them in an unauthorized and unlawful manner.

22. Throughout 2002-2006, defendants were aware that Mr. Stokes was doing business through 1Point Solutions.

23. Throughout 2002-2006, defendants were aware that 1Point Solutions was Mr. Stokes' primary business.

24. Throughout 2002-2006, defendants were aware that 1Point Solutions offered services to 401(k) retirement plans and individual retirement plans.

25. Throughout 2002-2006, defendants were aware that 1Point Solutions offered services to health care flexible savings accounts and/or other health insurance-related accounts.

26. Throughout 2002-2006, defendants were aware that 401(k) plan assets and retirement plan assets are typically invested in securities.

8

27. Throughout 2002-2006, defendants were aware that assets placed in certain types of health care plans offered by 1Point Solutions may be invested in securities.

28. Throughout 2002-2006, defendants were aware that the services that 1Point Solutions offered to clients included management services for 401(k) plans.

29. Throughout 2002-2006, defendants were aware that 1Point Solutions offered to assist and/or assisted plan sponsors with their investment portfolios.

30. Throughout 2002-2006, defendants were aware that 1Point Solutions made mutual fund investments available to its clients.

31. Under NASD rules, defendants had a duty either to supervise any securities-related activity in which they knew Mr. Stokes was engaged or to prevent him from engaging in such an activity. Defendants failed to comply with these regulatory obligations.

32. In fact, defendants had a greater than usual obligation to supervise the activities of Mr. Stokes because of significant problems that he had had prior to joining Spelman. Mr. Stokes' past history and prior misconduct includes the following:

(a) Mr. Stokes took bankruptcy in 1984.

(b) A company owned by Mr. Stokes took bankruptcy in 1984.

(c) Mr. Stokes had been affiliated with five different broker dealers before joining Spelman.

9

(d) In December 2000, Mr. Stokes was terminated by The Advisor Group because he failed to cooperate with the firm's investigation of Mr. Stokes' receipt of funds from a client and provided The Advisor Group with falsified documentation.

(e) In March 2001, Mr. Stokes received a formal caution from the NASD because he had failed to disclose certain outside business activities to The Advisor Group as required by NASD rules.

33. If defendants were not aware of all the facts set forth in ¶¶ 22-32 above, then it was because defendants were wildly reckless in discharging their supervisory duties under NASD rules and regulations.

34. Had defendants properly supervised Mr. Stokes they would have learned that he was engaged in the improprieties outlined above.

### D. LEGAL CLAIMS

#### COUNT ONE – VIOLATION OF TENNESSEE SECURITIES ACT

35. Plaintiffs incorporate herein paragraphs 1-34 above.

36. In connection with the offer and sale of securities, Barry Stokes intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of the Tennessee Securities Act, T.C.A. § 48-2-121, and actionable under T.C.A. § 48-2-122.

37. Plaintiffs reasonably relied on Mr. Stokes' representations and were unaware of the true facts.

38. Plaintiffs have been damaged as a result of Mr. Stokes' misconduct.

39. Defendants are liable under T.C.A. § 48-2-122(g) for the securities law violations of Mr. Stokes because defendants had the power, directly or indirectly, to control the activities of Mr. Stokes.

40. Defendants are also liable for the securities law violations of Mr. Stokes pursuant to the doctrine of *respondeat superior* because Mr. Stokes was an agent of defendants.

41. Pursuant to T.C.A. § 48-2-122, plaintiffs are entitled to recover from defendants rescissionary damages, interest, and attorney's fees.

## COUNT TWO – NEGLIGENT AND RECKLESS SUPERVISION

42. Plaintiffs incorporate herein paragraphs 1-34 above.

43. Mr. Stokes defrauded plaintiffs and converted their assets.

44. Plaintiffs were damaged by Mr. Stokes' misconduct.

45. Defendants had a duty under Tennessee common law to supervise the conduct and activities of their agent, Mr. Stokes. This included the duty to supervise all activities involving the purchase or sale of securities, even if such activities were conducted outside the regular course of defendants' business.

46. Defendants were negligent and reckless in their supervision of Mr. Stokes. Defendants failed properly to review and monitor Mr. Stokes' books and records, his activities, and his transactions with client assets.

47. With even a minimal level of appropriate supervision, defendants would have discovered long ago that Mr. Stokes was commingling the assets of his clients in accounts in his own name and/or that of 1Point Solutions, misappropriating client assets for his own purposes, and creating fictitious account statements for his clients. It is clear that defendants provided no meaningful supervision of Mr. Stokes' activities.

48. Had defendants properly supervised Mr. Stokes, they would easily have uncovered facts that made it highly foreseeable that Mr. Stokes was going to continue to defraud clients.

49. Defendants' negligence was a proximate cause of the losses sustained by plaintiffs.

50. Plaintiffs are therefore entitled to judgment against defendants in the amount of all the Plan's losses, plus prejudgment interest.

51. Because defendants' conduct rose to the level of a conscious disregard of the rights of plaintiffs, plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

## COUNT THREE – COMMON LAW FRAUD

52. Plaintiffs incorporate herein paragraphs 1-34 above.

53. In connection with his dealings with plaintiffs, Barry Stokes intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of Tennessee's common law of fraud.

54. Plaintiffs reasonably relied on Mr. Stokes' representations and were unaware of the true facts.

55. Plaintiffs have been damaged as a result of Mr. Stokes' misconduct.

56. Defendants are liable for the fraud of Mr. Stokes pursuant to the doctrine of *respondeat superior* because Mr. Stokes was an agent of defendants.

57. Plaintiffs are entitled to recover from defendants compensation for all plaintiff's losses, plus interest.

58. Plaintiffs are also entitled to recover punitive damages because of Mr. Stokes' willful fraud and misconduct.

THEREFORE, plaintiffs respectfully requests that the Court:

(a) Award judgment in favor of each plaintiff and against defendants for all losses incurred by plaintiffs during the

time when Mr. Stokes and 1Point Solutions were supposedly handling the plaintiffs' assets.

(b) Award prejudgment interest and attorney's fees in favor of each plaintiff.

(c) Award punitive damages in favor of each plaintiff and against defendant in such amount as the jury deems proper.

(d) Afford plaintiffs a trial by jury.

(e) Provide such relief as the Court deems to be just and proper.

Respectfully submitted,

*/s/ H. Naill Falls Jr.*
H. Naill Falls Jr., BPR #6787
John B. Veach III, BPR #8994
FALLS & VEACH
1143 Sewanee Rd.
Nashville, TN 37220
615/242-1800
Attorneys for Plaintiffs